## LEGALITY OF PROCEEDINGS FOR A PUBLIC IMPROVEMENT. [1]

Common Pleas Court of Summit County.

PATRICK T. MCCOURT, A TAX-PAYER, V. CITY OF AKRON ET AL.

Decided, September Term, 1912.

*Municipal Corporations—Legislation by Council for a Public Improvement—Requirements as to Publication of Ordinances—Bids for the Work—Acceptance of Material Manufactured by Only One Concern—Section 4228.*

1. An ordinance reciting that at an election duly held an issue of bonds was authorized for the purpose of meeting the expense of a designated public improvement and appropriating the proceeds from the sale of said bonds for said purpose, is the determining ordinance with reference to such improvement, and where published in accordance with law injunction will not lie to stop the proposed work because of failure to publish a subsequent ordinance which merely ordered the director of public service to enter into a contract with the lowest and best bidder for the carrying forward and completion of said work.

2. Public officials in considering bids for a public improvement are not debarred from determining to use material which is manufactured by only one firm, where such material is not covered by patents, and in the exercise of a reasonable discretion it is accepted, all things considered, as the best offered for the purpose intended.

*Sieber & Sieber* and *Otis, Beery & Otis,* for plaintiff.

*Jonathan Taylor, Ralph L. Kryder, Scott D. Kenfield* and *Rogers & Rowley,* contra.

STROUP, J.

This is an action brought by Patrick T. McCourt, as a taxpayer of the city of Akron, against the city of Akron, Robert M. Pillmore, director of public service, James McCausland, city auditor, and Harley J. Motz, city treasurer, and the plaintiff avers in his petition that a certain ordinance, No. 3242, passed by the city council of Akron on the 27th day of May, 1912, was

not published in accordance with the statute, and that for that reason the subsequent action of the director of public service in reference to the letting of a contract for the construction of certain parts of the municipal water works plant was illegal and in violation of law; and secondly, the plaintiff contends that the officers of the city in letting the contract mentioned illegally conducted themselves in such a manner that competition among the bidders was prevented and stifled, and that the lowest and best bid was not accepted, and that there was an abuse of discretion on the part of the executive officers of the city resulting in a fraud upon the city and the tax-payers thereof. Plaintiff prays in his petition that an injunction be granted restraining the executive officers of the city of Akron from going forward with the execution and performance of the said contract, and also restraining the payment of money on said contract.

The successful bidder to whom the contract was let, namely, the Carroll-Porter Boiler & Tank Company, was made a party defendant, and the answer of this defendant and the answer of the other defendants herein take issue with the plaintiff and aver that the proceedings of the council were in conformity with law and that the action of the executive officers of the city was lawful in all respects, and further aver that since the letting of the contract to the successful bidder large quantities of machinery, aggregating many thousands of dollars in value, for the purpose of carrying out the terms of said contract, has been ordered under said contract and that active operations have been commenced upon said work; and the answer of the Carroll-Porter Boiler & Tank Company especially avers that the price of pipe since the letting of the contract has greatly advanced, and if the contract is set aside and held for naught the city of Akron will be obliged to pay a much larger sum for the steel pipe required by it for the work contemplated; that the plaintiff, Patrick T. McCourt, was one of the unsuccessful bidders for said work, and that this action is not instituted and is not prosecuted in good faith by plaintiff; and all the defendants pray that the petition for a perpetual injunction may be refused and for other equitable relief.

In order to pass intelligently upon the questions presented, it is necessary to briefly review the proceedings had by the council and other officers of the city.

In the first place, the council passed a resolution, under date of April 8, 1912, known as No. 3177, wherein it was declared by the council necessary to issue bonds in the sum of $1,225,000 for the purpose of extending, enlarging, improving, repairing and securing a more complete enjoyment of the water works of the city of Akron, Ohio, and for the purpose of supplying water to said city and the inhabitants thereof. The resolution, among other things, recites that it is necessary to issue and sell bonds, and that the question of issuing and selling the same be submitted to the vote of the qualified electors of said city at a special election to be held on the 21st day of May, 1912, and that the clerk of the council be directed to transmit a copy of this resolution to the deputy state supervisors of elections.

In pursuance of said resolution a vote of the people was had, which resulted in the requisite number of electors voting in favor of the issuing of said bonds. Thereupon an ordinance, known as No. 3233, was passed on May 27, 1912, wherein, after reciting the fact that an election was held and ordaining that the bonds of said city be issued in the sum of $1,225,000 for the purposes aforesaid, Section 4 of said ordinance proceeds as follows:

"The proceeds from the sale of said bonds, except the premiums and accrued interest thereon, shall be placed in the treasury to the credit of the municipal water works fund and shall be used for the purpose of extending, enlarging, improving, repairing and securing a more complete enjoyment of the water works of the city of Akron, Ohio, and for the purpose of supplying water to said city and the inhabitants thereof and for no other purpose, and the premiums and accrued interest received from such sale shall be transferred to the trustees of the sinking fund, to be applied by them in the manner provided by law."

The above-mentioned resolution and ordinance were each properly passed and published in accordance with the statute. On the 27th day of May, 1912, the ordinance in question, No. 3242, was properly passed by the city council, but was not pub-

lished, which ordinance provided that the director of public service be and he is hereby authorized to enter into a contract with the best and lowest bidder, after advertisement according to law, for the construction of the following parts of the municipal water works plant of the city of Akron, and therein follows the particular work contemplated by the contract.

It is contended by the plaintiff that this last-mentioned ordinance should have been published, and for that reason the action of the administrative officers in letting the contract was illegal and void; that this is an ordinance of a general nature and providing for an improvement within the contemplation of the statute, and that it is really the determining ordinance which is a necessary pre-requisite to the further proceedings; that Section 4328 of the General Code provides, in substance, that an expenditure for more that $500 shall first be authorized and directed by ordinance of council.

The municipal code is somewhat blind as to the necessary steps to be taken when the expenditure exceeds the sum of $500. In reference to the letting of a contract under the department of public safety, which does not differ materially from the statute under consideration, the Supreme Court, in the case of *City* v. *Dobson,* 81 O. S., 66, and reading from pages 76-77 has this to say:

"The council provides the money for carrying on the government, either by a levy of taxes, or an issue of bonds, and it is proper that it should have some control over the expenditures, but considering these sections in the light of the purpose of the code we think their requirements are not by an ordinance making an appropriation and stating generally the purpose for which it is made, and authorizing the directors to enter into contracts to effect that purpose."

It is not possible many times in arriving at the meaning of statutes such as are found in the municipal code to give force and effect to every word and phrase used in the various sections of a series of statutes. We must take into account the general purpose of the statutes, one of which was in this case to constitute

the council, the legislative body and the director of public serv-
ice the executive or administrative department of the city, al-
though as to special assessments the Legislature was not wholly
consistent in that it is provided that the council should prepare
and cause to be prepared plans and specifications, estimates and
profiles of the proposed improvement, which duties are clearly
administrative in their character. But nevertheless the general
purpose of the statute should be observed in construing these
various provisions.

It is contended by the defendants in the first place that Or-
dinance No. 3242 was not necessary, and in the second place, that
even if it was necessary there is no provision of law demanding
its publication.

The director of public service under the law is the only officer
who could prepare the plans and specifications, advertise for
bids and enter into the contract, because those duties are plainly
administrative duties. After the council had appropriated the
money in pursuance of the proper resolution of necessity and the
vote of the people, the director of public service was the proper
officer to take up the work from thence on and let the contract
upon the approval of the board of control.

Section 4 of Ordinance No. 3233 above quoted clearly appropri-
ates the money for the improvement and for no other purpose
can it be used. If in this section there had been words authoriz-
ing the director of public service to enter into the contract, no
question could then be raised. What other than that could the
wording of the ordinance mean? It provides that the money
shall be placed in the treasury to the credit of the municipal
water works fund and be used for the purpose of extending, en-
larging, improving, repairing and securing a more complete en-
joyment of the water works and for the purpose of supplying
water to said city and the inhabitants thereof. Under the statute
the money could not be expended, unless the proper advertise-
ment for bids was had and a contract entered into by the director
of public service, and why, in the interpretation of this section
of the ordinance should we not give it the only construction
which under the law could be placed on the same, and in view

of the object to be attained by the passage of the municipal code I think this ordinance may be properly termed the determining ordinance of the council.

But we need not be content with this construction placed upon Ordinance No. 3233. Ordinance No. 3242, wherein it is provided that the director of public service be authorized to enter into the contract in question, was properly passed by the city council, but was not published. It is clear from a reading of the statutes that the department of public service is separate from the legislative department. The object of that portion of Section 3228 of the General Code wherein it recites that the expenditure shall be authorized and directed by ordinance of council, simply means that the council give proper notification to the director of public service that the money is appropriated and that he, the director of public service, is then to proceed with those duties which devolve by statute upon him. If the council went further they would be invading the functions of the administrative duties of the director of public service, and, as is well said by the Supreme Court in the case of *City* v. *Dobson, supra,* it must have been the meaning of the Legislature that after the appropriation has been made by council and the director is authorized by council, he is to proceed with the work. The sections of the statute pertaining to publication of ordinances do not provide that all ordinances shall be published, but only those of a general nature or providing for an improvement, and that is reasonable, as there is no use of going to the expense of publishing all ordinances unless the public are interested in the publicity of the same.

In this case the preliminary resolution was published, the question of whether bonds should be issued for this particular purpose was submitted to the electors of the city, the source of all power, they gave the requisite sanction for the issuing of the bonds; then followed the ordinance authorizing the issuing of the bonds and the disposal of the proceeds for the particular purpose in question. Now, with what reason can it be urged, even if Ordinance No. 3242 was a necessary step to be taken in the chain of proceedings, that it should be given publicity? It could answer no rightful purpose, for the public had already

been informed fully as to every step that had been taken up to that point.

I hold that the action of the council in this respect was in conformity with law.

As to the claimed infirmity of the proceedings as to the letting of the contract, the plaintiff claims that the members of the board of control secretly and unlawfully, in advance of receiving bids, determined that they would use what is known in the trade as lock bar steel pipe; that such determination by the board was without knowledge of the various bidders; that the bid of the successful bidder was for rivetted steel pipe, which is a different pipe than a lock bar steel pipe; that after the bids were opened, in pursuance of said unlawful determination, the board switched from rivetted steel pipe to lock bar pipe, without advertisement therefor; that the plaintiff, P. T. McCourt, advised said director of public service that he would furnish lock bar steel pipe and perform the labor in laying the same for much less than was the bid of the successful bidder; that one of the bidders, the T. A. Gillespie Company, was the only bidder for furnishing and laying steel lock bar pipe and that the lock bar pipe is exclusively manufactured and controlled by the said T. A. Gillespie Company, and without reciting further from the petition, the plaintiff claims that such proceedings were had by the officers as stifled competition, all of which resulted in a fraud upon the taxpayers of the city of Akron.

Many of the allegations of the petition fall to the ground when, as the evidence shows, the bid of the sucessful bidder was not for steel rivetted pipe, but was for "for furnishing and laying 36-inch steel pipe ¼-inch thick." The advertisement for bids was for steel pipe delivered and laid complete.

Now, it does not matter as to how these bids were tabulated by the engineer in charge of the work; we must determine from the bid itself what it was upon. The evidence shows that "lock bar steel pipe is made by upsetting the edge of the plates and connecting them by a lock bar in the shape of an H going over the opposite edges and being forced down over them by hydraulic pressure. This takes the place of the riveting in the longtitu-

dinal joints. The circular joints may be made by riveting or otherwise as for riveted pipe.'' In riveted steel pipe the longtitudinal as well as the circular joints of the·pipe are connected by rivets. Both lock bar pipe and riveted steel pipe come within the definition of steel pipe.

It is unnecessary to lengthen this opinion by quoting from the various sections of the specifications. It is the established law that public officers in advertising for bids may call for bids upon various kinds of materials. Section 23 of the specifications in this case provides that lock bar pipe or pipe of other approved type may be used. The director of public service very properly advised the respective bidders as follows:

''In considering the various bids received the director will take into account not only the prices bid on the different types of .construction, but also the relative strength, reliability, carrying capacity and durability of the several materials and methods of construction proposed.''

The director also stated that he reserved the right to reject any or all bids or accept any bid should he deem it to be for the interest of the city of Akron so to do.

The evidence shows that the board of control, who had the last say as to the acceptance of the contract, accepted the bid of the Carroll-Porter Boiler & Tank Company for the sum of $379,391, including the work of laying the same, being the price which the company bid for steel pipe and the laying of the same, and providing further that the mill scales be removed from the plates, which, if not included in the specifications, was certainly in the interest of the city. The fact that the T. A. Gillespie Company was the only bidder who specially designated steel lock bar pipe is no reason under the ample plans and specifications why the contract could not be awarded to the successful bidder as long as it bid upon a class of material which comprised the particular kind of material accepted by the board of control. While the petition recites that lock bar pipe is exclusively manufactured and controlled by the said T. A. Gillespie Company, the evidence shows that any patents on the same have expired,

and certainly it can not be contended that because the material is manufactured by but one firm, the city or any public officer having the matter in charge is thereby precluded from giving the city the benefit of that material, if it should deem it for the best interest of the city.

It is urged that mathematically the bid accepted was not the lowest bid, but in view of our statute which reads that the particular board having this in charge is not bound by the lowest bid, but the lowest and best bid, the awarding officers may take into account not only the price but the ability of the contractor to perform the work and any other considerations which should actuate public officers in the proper discharge of their duties.

The evidence shows that the successful bidder in this case was experienced in this kind of work, and the evidence does not disclose that lock bar pipe when laid is inferior to other kinds. The determining as to which is the best and lowest bid is lodged with the officers of the city, and the court will not interfere with that discretion, unless a gross abuse of the same is manifest.

True in this case the evidence shows that if another bid had been accepted it would have been some thirty odd thousand dollars less than the one which was accepted, but the enterprise which the city is undertaking is one of vast proportions, and the court can not say but that the officers of the city have exercised the best business judgment and are to be comended rather than criticized.

I hold that this claim of the plaintiff is unfounded in law. The prayer of the petition for an injunction is refused and the petition dismissed at the costs of plaintiff.